[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11575
Non-Argument Calendar
_____

Agency No. A088-133-061

YUEHUA LIU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 6, 2016)

Before HULL, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Yuehua Liu seeks review of a final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT").  Liu, a native and citizen of China, claimed past persecution and a well-founded fear of future persecution in China on account of her participation in an underground Christian church.  Liu's petition challenges the IJ's determinations, adopted by the BIA, that Liu failed to show she suffered past harm in China rising to the level of persecution or that there was a reasonable possibility of future harm on account of her religion or other protected ground given that other members of her underground church continued to reside and work in China without harm.  After review, we deny the petition for review.[1]

## I.  GENERAL PRINCIPLES

To establish eligibility for asylum, the applicant must show either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Immigration and Nationality Act ("INA") § 101(a)(42)(A), 8 U.S.C.

---

[1]Where, as here, the BIA agreed with the IJ's conclusions regarding Liu's failure to establish her eligibility for relief, we review both the IJ's and the BIA's decisions.  See Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010).  We review the factual determination that an alien is statutorily ineligible for asylum under the "highly deferential" substantial evidence test, which requires that we affirm the IJ's and the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Al Najjar, v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation marks omitted).  We will reverse "only when the record compels reversal."  Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1199 (11th Cir. 2009) (quotation marks omitted).

2

§ 1101(a)(42)(A); Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006); 8 C.F.R. § 208.13(a), (b). Similarly, to show eligibility for withholding of removal under the INA, an applicant must show that it is more likely than not that he has been or will be persecuted on account of one of the five protected grounds. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1126, 1232 (11th Cir. 2005). Because this standard is more stringent than the standard for asylum, an alien who fails to establish asylum eligibility generally cannot satisfy the higher burden for withholding of removal. Id. at 1232-33.

Although the INA does not define persecution, this Court has recognized that it is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Id. at 1231 (quotation marks omitted). We evaluate the harm a petitioner suffered cumulatively and by considering the totality of the circumstances on a case-by-case basis. Shi v. U.S. Att'y Gen., 707 F.3d 1231, 1235-36 (11th Cir. 2013).

Accordingly, this Court has concluded that threats in conjunction with brief detentions or a minor physical attack that does not result in serious physical injury do not rise to the level of persecution. See, e.g., Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352-53 (11th Cir. 2009) (four-day detention, five-hour interrogation and beating with no evidence of physical harm, and post-incarceration monitoring); Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1171-72

3

(11th Cir. 2008) (36-hour detention, beatings with a belt resulting in scratches and bruises, two-day hospitalization, and threat of arrest); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006) (five-day detention, during which the alien was forced to watch anti-Falun Gong videos, stand in the sun for two hours, and sign a statement promising to no longer practice Falun Gong).  On the other hand, we have found that longer detentions coupled with either multiple beatings or "singularly cruel" tactics that result in the need for medical attention have constituted persecution.  See, e.g., Shi, 707 F.3d at 1235-39 (seven-day detention and two interrogations, one involving physical abuse and the other handcuffing to a bar overnight in the rain, resulting in illness and medical treatment); Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211, 1215-17 (11th Cir. 2007) (threats, numerous interrogation and beatings during a 15-day detention that resulted in a two-month hospitalization, and two subsequent physical attacks);  Ruiz v. Gonzalez, 479 F.3d 762, 766 (11th Cir. 2007) (18-day detention accompanied by threats and multiple beatings).

## II.  LIU'S PERSECUTION CLAIMS

### A.    Past Persecution

Substantial evidence supports the IJ's and BIA's conclusion that Liu failed to show she suffered past persecution.[2]  Liu testified that after police arrested her and other members of her church group, she was detained for seven days and interrogated twice.  During her second interrogation, Liu was slapped and kicked and her hair was pulled, but she did not report any resulting injuries.  Although Liu, like the petitioner in Shi, was detained for a week, Liu was not subjected to "singularly cruel" tactics such as being handcuffed to a bar outside overnight in the rain.  See Shi, 707 F.3d at 1238-39.  Importantly, the petitioner in Shi became ill, was released after authorities feared he would die in custody, and then sought medical treatment.  Liu, on the other hand, did not present any evidence that she needed medical attention as a result of her treatment during detention.  See id..  This Court has held that individuals who suffered similar or worse abuse did not suffer harm rising to the level of persecution.  See Kazemzadeh, 577 F.3d at 1353; Djonda, 514 F.3d at 1171, 1174; Zheng, 451 F.3d at 1289-91.

---

[2]For the first time on appeal, Liu argues that she was persecuted on account of her imputed political opinion.  We lack jurisdiction to review this issue because Liu failed to exhaust it before the BIA.  See INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006).  Liu also argues that she established a nexus between her mistreatment and her religion and anti-government political opinion, but the BIA did not deny Liu relief because she failed to show a nexus to a protected ground.  Thus, the issue of a nexus is not properly before us.  See Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1344 (11th Cir. 2007).

As to economic persecution, Liu did not show that her economic hardship as a result of her job loss was so severe that she was deprived of a means of earning a living.  See Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001).  While Liu stated that she had no means of earning an income, she did not provide any evidence other than her conclusory statement to that effect.  Like the petitioner in Zheng, Liu presented no evidence that she searched for another job after she was fired; Liu merely testified that she did not have any other jobs in China and that she did not try to get her job back because it would have been futile. See Zheng, 451 F.3d at 1291.  Further, the other members of her church group were able to work in China.

Considering the facts of Liu's detention, the conditions of her release, and her economic situation, Liu's case is more akin to Zheng, in which the petitioner was detained for five days, suffered some mistreatment but was not harmed, was forced to renounce Falun Gong, and lost his job, and the record in Zheng did not compel the conclusion that he suffered past persecution.  See Zheng, 451 F.3d at 1290-91.  In short, the cumulative harm Liu suffered falls short of the extreme mistreatment found in other cases where this Court was compelled to conclude that the petitioner was persecuted.

## B.    Future Persecution

The record also does not compel the conclusion that Liu has a well-founded fear of future persecution.  To establish a well-founded fear of future persecution, the petitioner must show a reasonable possibility that he will be singled out for persecution on account of a protected ground, and that his fear is both "subjectively genuine and objectively reasonable."  Kazemzadeh, 577 F.3d at 1352 (quotation marks omitted).  Alternatively, the petitioner can prove that she is a member of, or is identified with, a group that is subjected to a "pattern or practice" of persecution in his country of nationality."  Id. (quotation marks omitted).

First, substantial evidence supports the conclusion that Liu failed to show a pattern or practice of persecuting Christians in China, as the 2013 International Religious Freedom Report for China states that Christians are permitted to worship in state-sanctioned churches and local authorities in some areas tacitly approve of unregistered church groups.  See Matter of A-M-, 23 I. & N. Dec. 737, 741 (BIA 2005) (explaining that a "pattern or practice" of persecution means persecution of a group that is "systemic, pervasive, or organized" (quotation marks omitted)).

Second, substantial evidence supports the conclusion that Liu did not present "specific, detailed facts showing a good reason to fear that [she] . . . will be singled out for persecution."  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1287 (11th Cir. 2001) (quotation marks and internal quotation marks omitted).  Importantly, the

7

fact that the other members of Liu's home church group arrested with Liu continued to live and work in China for years supports the IJ's and BIA's conclusion that there is not a reasonable possibility Liu would be singled out for persecution based on her religion if she returned to China.

Liu submitted a 2014 letter from her brother indicating that police had raided another home church group in October 2014 and arrested eight people, including some of Liu's fellow church members.  However, the letter does not specify what happened to the church members after their arrest or how many, if any, were detained.  Further, Liu presented no evidence of any arrests or mistreatment of church members during the years between Liu's October 2006 arrest and this second raid in October 2014, a span of eight years.  Finally, while Liu presented evidence that police suspected Liu of mailing Christian materials to China and continued to ask about her whereabouts, this evidence was limited to her hometown, and there was no evidence that police would search for her elsewhere in China, particularly since there are areas where local authorities tacitly permit unregistered church groups.  In sum, the record does not compel a conclusion that Liu showed past persecution or a reasonable possibility of future persecution.

Because Liu failed to satisfy the less stringent standard for asylum eligibility, she also necessarily failed to satisfy the higher standard required for withholding of removal under the INA and CAT relief.  See Zheng, 451 F.3d at

8

1292.  For these reasons, substantial evidence supports the IJ's and the BIA's decision.

**PETITION DENIED.**